IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION


| | |
|---|---|
| WILLIE ADAMS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION NO. |
| v. ) | 2:10cv924-MHT |
| ) | (WO) |
| THE CITY OF MONTGOMERY, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

Plaintiff Willie Adams brought this employment-
discrimination lawsuit against defendant City of
Montgomery, Alabama, charging it with race discrimination
and retaliation in violation of Title VII (Title VII of
the Civil Rights Act of 1964, as amended, 42 U.S.C.
§§ 1981a & 2000e-2000e-17) and § 1981 (the Civil Rights
Act of 1866, 42 U.S.C. § 1981, as enforced through 42
U.S.C. § 1983).  The court granted summary judgment in
favor of the city on some claims, see Adams v. City of
Montgomery, 2012 WL 1414979 (M.D. Ala. Apr. 24, 2012)
(Thompson, J.); Adams v. City of Montgomery, 2012 WL

1952294 (M.D. Ala. May 30, 2012) (Thompson, J.), while others went to trial twice.  After the first trial resulted in a mistrial, a second jury found for the city on all remaining claims.

The case is currently before the court on the city's motion for attorneys' fees.  For the reasons discussed below, the motion will be denied.

## I.  BACKGROUND

Adams, an American of African descent, first came to work for the city in 2003, but he left in August 2004 to become a long-distance truck driver.  In 2007, he returned to work for the city. According to city personnel rules, a former employee who returns to work for the city after more than two years must be hired as a temporary employee, who is on probation for the first six months of his employment.

Adams was hired as a Service Maintenance Worker ("SMW") I.  He had sought to be hired at a higher level,

2

as an SMW III. He believed that his commercial drivers license would entitle him to an SMW III position, but he did not identify any specific policy to that effect.

Primarily, Adams wanted to work as a truck driver, and, in November 2007, one of the city's drivers retired, creating an opening.  He applied for the position, but Jeremy Jarrell, a white man, got the job instead. Jarrell had also reentered the employment of the city after a period away but, because he was away for less than two years, the city rehired him on a permanent basis.  Unfortunately for Adams, city policy did not allow a temporary employee to be upgraded to the truck-driver position.  Therefore, while Jarrell's permanent employment made him eligible for promotion to driver, Adams's temporary status excluded him from eligibility.

On May 28, 2008, Adams's supervisor, James Ivey, transferred him from his job repairing the city's roads to the lower-status "ditch crew," which trims weeds and performs other gardening work.  An Employee Counseling

3

Record dated May 28 alleges that he had not been working diligently and specifically cited an incident on May 22 during which other workers had to carry his load.

Adams left work early on May 28 to file an internal-affairs discrimination complaint alleging that the transfer was racially motivated.  The next day, he was accused of taking unauthorized sick leave for the time he took off to file the complaint.  He contended that he had received permission to leave work and that white employees frequently left work early without consequences.  Adams received a second Employee Counseling Record for taking the unauthorized leave.

On August 7, 2008, Adams was reprimanded again, this time for taking an unapproved absence.  Because this was his third Employee Counseling Record, he received a three-day suspension without pay.

Adams filed two charges with the Equal Employment Opportunity Commission, on June 18, 2008, and April 9, 2010.  He proceeded to file this lawsuit under Title VII

4

and § 1981 (as enforced by § 1983) on October 29, 2010. He alleged that many of the city's personnel decisions were motivated by race and that the decisions from May 28 onward were also motivated by an intent to retaliate for his complaints of discrimination.

At the summary-judgment stage, this court dismissed Adams's race-discrimination claims arising out of the August 2007 denial of the SMW III position and the November 2007 failure to promote him to the truck-driver position, as well as his retaliation (but not his race-discrimination) claim arising out of his transfer to the ditch crew. After the close of the presentation of evidence at the first trial, the court found as a matter of law that Adams had failed to show a policy or custom of discrimination that would support municipal liability under § 1981, as enforced through § 1983.

Adams's Title VII claims of racial discrimination and retaliation went to the jury. The first jury was unable to reach a unanimous verdict, resulting in a mistrial.

5

After a second trial, a new jury found for the city on all remaining claims.

## II.   STANDARD FOR ATTORNEY'S FEES FOR A PREVAILING CIVIL-RIGHTS DEFENDANT

Attorney's fees may be awarded to the prevailing party in a lawsuit brought under Title VII (42 U.S.C. § 2000e-5(k)) or under §§ 1981 and 1983 (42 U.S.C. § 1988).   Neither statute differentiates explicitly between prevailing plaintiffs and defendants, but the underlying goals and legislative history of the civil-rights statutes led the Supreme Court to establish asymmetrical standards for fee awards.   <u>Christiansburg Garment Co. v. E.E.O.C.</u>, 434 U.S. 412, 418-22 (1978). Although a "prevailing plaintiff ordinarily is to be awarded attorney's fees," <u>id</u>. at 417, a prevailing defendant may be awarded fees only if "a court finds that [the plaintiff's] claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so," <u>id</u>. at 422.   Even after such

a finding, the award of fees to a prevailing defendant is within the court's discretion. Id. at 421.

There is a three-factor framework to determine whether a plaintiff's case is sufficiently frivolous to justify awarding attorney's fees to the prevailing defendant. The court should consider "whether (1) the plaintiff established a prima facie case; (2) the defendant offered to settle; and (3) the trial court dismissed the case prior to trial." Bonner v. Mobile Energy Services Co., 246 F.3d 1303, 1304 (11th Cir. 2001) (per curiam) (citing Sullivan v. School Bd. Of Pinellas Cty., 773 F.2d 1182, 1189 (11th Cir. 1985)). However, the court must still address the question of attorney's fees on a "case-by-case basis"; the three factors are "only general factors to guide the inquiry." Bonner, 246 F.3d at 1304 n.9.

Finally, if a plaintiff brings a mixture of frivolous and non-frivolous claims, the court may order the plaintiff to pay the defendant's attorneys fees for the

time spent on the frivolous claims. <u>Fox v. Vice</u>, \_\_ U.S.

\_\_, 131 S.Ct. 2205 (2011).  In that circumstance, the

plaintiff may be ordered to pay for only the expenses

that the defendant would not have incurred but-for the

inclusion of the frivolous claims.  <u>Id</u>. at \_\_\_, 131 S.Ct.

at 2215.


### III.  DISCUSSION

It can be easy, with the benefit of hindsight, to see

all of the faults in a claim and none of its potential

merit.   The  court  must  "resist  the  understandable

temptation to engage in <u>post hoc</u> reasoning by concluding

that, because a plaintiff did not ultimately prevail, his

action   must   have   been   unreasonable   or   without

foundation." <u>Christianburg</u>, 434 U.S. at 421-22. Although

Adams did not ultimately prevail, his claims were not "so

patently devoid of merit as to be 'frivolous.'" <u>Sullivan</u>,

773 F.2d at 1189.

8

Adams's claims fall into three main categories: (1) the Title VII claims arising from disciplinary actions taken against Adams; (2) the §§ 1981 and 1983 claims arising from the same actions; and (3) the claims on which the city received summary judgment, see Adams v. City of Montgomery, 2012 WL 1414979 (M.D. Ala. Apr. 24, 2012) (Thompson, J.); Adams v. City of Montgomery, 2012 WL 1952294 (M.D. Ala. May 30, 2012) (Thompson, J.). None of the three sets of claims was so meritless as to allow for an award of fees to the city.[*]

## A. Disciplinary Actions--Title VII Claims

Adams claimed that his three-day disciplinary suspension was motivated by racial discrimination and retaliation and that all of the disciplinary actions that

---

[*]In its motion for attorney's fees, the city also refers to several claims based on failure to promote Adams to foreperson. As the court discussed in an earlier opinion, those claims were the subject of a different lawsuit. Adams, 2012 WL 1414979 at *8 n.8; see Adams v. City of Montgomery, 2013 WL 5441857 (M.D. Ala. Sept. 27, 2013) (Watkins, C.J.). Therefore, they cannot be the basis for a fee award to the city in this case.

led up to his suspension were in part to retaliate against him for filing his discrimination complaints. (The prior disciplinary actions were significant enough to support a retaliation claim, but did not arise to adverse-employment actions sufficient to support a race-discrimination claim. <u>Adams</u>, 2012 WL 1414979 at *5-6.)

The court found that Adams presented a prima-facie case supporting these claims.  In particular, Adams introduced evidence that his supervisor frequently used racial slurs and racially charged language in the workplace.  With regard to the disciplinary actions for taking unauthorized sick leave, Adams introduced evidence calling into question whether he had even taken the time as sick leave and whether the leave policy was applied similarly to other workers in the department. Furthermore, each of the supervisors knew of Adams's discrimination complaints when they took disciplinary action, raising the plausibility that the disciplinary action was for a retaliatory purpose.

10

This evidence was sufficient to present a circumstantial prima-facie case at the summary-judgment stage. Furthermore, the claims went before two separate juries, the first of which was unable to come to a decision. The fact that the first jury hung suggests that these claims were a tough call, requiring "careful attention and review." See Walker v. NationsBank of Florida, N.A., 53 F.3d 1548, 1559 (11th Cir. 1995). To declare those claims frivolous at this point would be impermissible "hindsight logic." Christianburg, 434 U.S. at 422.

B. Disciplinary Actions--§§ 1981 and 1983 Claims

Adams filed suit under 42 U.S.C. § 1981 in addition to Title VII. Generally, Title VII and § 1981 "have the same requirements of proof and use the same analytical framework." Standard v. A.B.E.L. Services, Inc., 161 F.3d 1318, 1330 (11th Cir. 1998). However, in the Eleventh Circuit Court of Appeals, § 1981 does not create a right

of action for damages against state actors. Jett v. Dallas Ind. Sch. Dist., 491 U.S. 701, 732-33 (1989); Butts v. Cty. of Volusia, 222 F.3d 891, 894-95 (11th Cir. 2000) (holding that Jett was not superseded by the Civil Rights Act of 1991). But a municipal employee may seek damages from his employer for violation of his § 1981 rights through a lawsuit pursuant to § 1983. Butts, 222 F.3d at 894-95. Thus, the employee must meet the standards for municipal liability under § 1983, standards that the Supreme Court set forth in Monell v. Dept. of Soc. Serv., 436 U.S. 658 (1978). Monell is satisfied if a plaintiff shows that a city's discrimination (or other rights violation) stemmed from a "policy or custom" of the city. Id. at 694.

The court dismissed Adams's § 1981 claims during the first trial after finding that he had not presented sufficient evidence of a policy or custom of race discrimination or of retaliation against discrimination complainants. However, that does not mean that he was

12

unjustified in bringing or pursuing § 1981 claims. Generally, a city will not have an explicit policy that endorses racial discrimination in employment or retaliation against discrimination complaints. "Nevertheless, § 1983 liability may be imposed on a municipality based on 'governmental "custom" even though such a custom has not received formal approval through the body's official decisionmaking channels.'" Griffin v. City of Opa-Locka, 261 F.3d 1295, 1308 (11th Cir. 2001) (quoting Floyd v. Walters, 133 F.3d 786, 795 (11th Cir. 1998)). In Griffin, the Eleventh Circuit found that a city had a custom of condoning its city manager's sexual harassment. The city manager frequently "engaged in vulgar, sexually suggestive, and demeaning conversations" toward female employees, demanded romantic and sexual encounters from those employees, and threatened women who rebuffed his advances. Id. at 1308-09. Furthermore, "there [was] no question that the Mayor and City

Commissioners knew about [the city manager]'s sexual harassment and misconduct." <u>Id</u>. at 1309.

In this case, Adams had witnessed Ivey, his supervisor, using racial epithets openly, and Ivey had subjected Adams to what he believed to be racial discrimination. At the pleading stage, Adams could have reasonably believed that the city was aware of Ivey's statements and that other African-American employees may have been discriminated against by Ivey. In fact, discovery revealed that another African-American employee had filed an Equal Employment Opportunity Commission charge against Ivey for both racial discrimination and retaliation and that Ivey had received a written Employee Counseling Record as a result. These facts are not nearly as extreme or troubling as the circumstances described in <u>Griffin</u>. Nonetheless, it was not entirely unreasonable or groundless for Adams to believe that the court could find that they established notice and inaction with sufficient evidence to reach a jury or that

a jury could infer from the circumstances a custom of condoning racial discrimination. <u>See</u> <u>Cordoba v. Dillard's Inc.</u>, 419 F.3d 1169, 1186 (11th Cir. 2005) (holding that an argument which "lacked support in logic and commonsense" was nonetheless non-frivolous when it relied on an interpretation of Eleventh Circuit case law, albeit strained).

Furthermore, it would be reasonable to believe that, if the city had thought that the § 1981 claims were frivolous, it would have sought to have had them dismissed sooner. In fact, the city did not bring the "policy or custom" issue to the court's attention on summary judgment. <u>Cf.</u> <u>Quintana</u>, 414 F.3d at 1307 ("the presentation of a prima facie case in response to a motion for summary judgment means that a claim necessarily cannot then be considered frivolous"). The first time the city specifically addressed the § 1981 claims was the inclusion of a proposed jury instruction on "policy or custom." Moreover, even if the claims had

15

been frivolous, it seems that the city did not invest significantly more attorney time or resources as a result of them. <u>Fox v. Vice</u>, 131 S.Ct. at 2215 ("But if the defendant would have incurred those fees anyway, to defend against <u>non</u>-frivolous claims, then a court has no basis for transferring the expense to the plaintiff.")

## C. Remaining Claims

Finally, Adams pled Title VII and § 1981 claims arising out of the two employment decisions from soon after he was rehired by the city: his initial classification as SMW I (rather than SMW III) and the city's failure to promote him to a truck-driver position. The court granted summary judgment to the city on each of these claims.

Adams was unable to present a prima-facie case of discrimination for either claim. With regard to the SMW III claim, he could not identify either a comparator who was hired at the SMW III level or circumstantial evidence

16

of discriminatory intent on the part of those who hired him. As for the truck-driver claim, Adams was not qualified for the position under city personnel rules. As a temporary employee, he was ineligible for a promotion to the truck-driver position.

These claims do satisfy most of the three factors in the framework discussed above for determining whether a claim was frivolous. The court found that Adams had not presented a prima-facie case of discrimination--the first factor; the court granted summary judgment to the city, not allowing the claims to go before a jury--the third factor; and, as to the settlement-offer factor, the city noted only that the parties engaged in mediation. This last factor does not present the court with any evidence as to the size of any offer the city made to Adams. "[T]he amount of the offer is a necessary factor in evaluating whether a settlement offer militates against a determination of frivolity. In the absence of evidence of an offer of a substantial amount in settlement, this

17

factor does not support either party." <u>Quintana</u>, 414 F.3d at 1310 (internal citation removed).

However, as noted above, the three factors are "only general factors to guide the inquiry." <u>Bonner</u>, 246 F.3d at 1304 n.9. The court cannot find that Adams's claims were frivolous. Employers do not always enforce their own rules strictly, but Adams could not be certain about how flexible the rules were prior to discovery. Furthermore, Adams experienced a work environment that he perceived to be racially discriminatory. In a racially discriminatory environment, it may be difficult to tease out which aspects of the employment relationship were tainted by discrimination and which were not--especially before the benefit of discovery. It is to the advantage of all parties that a plaintiff includes in his initial complaint all of the actions he has reason to suspect to be illicit, rather than filing an under-inclusive initial pleading and coming back to amend the pleadings or file

18

Case 2:10-cv-00924-MHT-TFM   Document 236   Filed 03/04/14   Page 19 of 20

a separate suit after discovery reveals that the plaintiff may have additional viable claims.

Finally, like the § 1981 claims, it is not clear that the city invested significant resources in the case because of Adams's hiring and promotion claims.  If the court awarded fees to the city on these claims, the parties would have to disentangle what aspects of the city's attorney's work would not have been necessary but-for these claims.  In all likelihood, the court could award fees for no more than a small fraction of the 73.75 hours that the city's attorney spent on Adams's case before the claims were resolved at summary judgment.  The costs of arguing and adjudicating such a <u>de minimis</u> fee award would overwhelm any benefit to the city.


                        *   *   *

Accordingly, for the above reasons, it is ORDERED that defendant City of Montgomery's motion for attorney's fees (doc. no. 221) is denied.

DONE, this the 4th day of March, 2014.

            /s/ Myron H. Thompson
        UNITED STATES DISTRICT JUDGE